IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ISAIAH W. MCCOY, | § | No. 558, 2012 and 595, 2012 |
| | § | (CONSOLIDATED) |
| Defendant Below- | § | |
|    Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for Kent County |
| | § | |
| STATE OF DELAWARE, | § | ID No. 1005008059A |
| | § | |
|    Plaintiff Below- | § | |
|    Appellee. | § | |

Submitted:  September 24, 2014
Decided:  October 1, 2014

Before **STRINE**, Chief Justice, **HOLLAND, RIDGELY, VALIHURA,** Justices, and **BOUCHARD,**\* Chancellor, constituting the Court *en Banc.*

## *ORDER*

On this 1st day of October 2014, it appears to the Court that:

(1) In this capital murder case, Defendant-Below/Appellant Isaiah McCoy ("McCoy") appeals from a Superior Court jury conviction of two counts of First Degree Murder, First Degree Robbery, Second Degree Conspiracy, and two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"). McCoy raises a total of five claims on appeal that he argues require reversal of his conviction and death sentence. His lead argument is that the trial court erred by *sua sponte* refusing to accept one of his peremptory challenges. McCoy argues

---

\* Sitting by designation pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a) to fill up the quorum as required.

1

that the court violated his right to a fair trial by seating a juror with significant potential bias over his objection. In response, the State argues that McCoy's peremptory challenge was made in a racially discriminatory manner, contrary to *Batson v. Kentucky*,[2] and that the trial court's refusal to accept McCoy's peremptory challenge was appropriately premised on a reverse *Batson* violation.[3] Because we find an incomplete record to review the trial court's application of *Batson*, we remand this case for completion of the record and retain jurisdiction.

(2) In July 2010, McCoy was charged with two counts of First Degree Murder, First Degree Robbery, Second Degree Conspiracy, two counts of PFDCF, and one count of Motor Vehicle Theft in connection with the shooting death of James Munford. In May 2012, the trial court granted McCoy's request to proceed *pro se* with standby counsel.

(3) During jury selection, McCoy, who is African-American, used peremptory strikes to remove fourteen Caucasians from the jury. When McCoy exercised a peremptory challenge to remove his eighth Caucasian juror from the panel, the prosecution made a reverse *Batson* challenge, asking that McCoy provide some justification for his peremptory strike. McCoy responded by stating that the juror's "son is Caucasian, he's a police officer."[4] The trial court then

---

[2] 476 U.S. 79 (1986).
[3] *See Burton v. State*, 925 A.2d 503, 2007 WL 1417286 (Del. 2007).
[4] Appellant's Op. Br. App. at A1934.

2

performed a *Batson* analysis and ultimately concluded that there was no reverse *Batson* violation. But the trial court issued a warning to McCoy, telling him that he "must show that [his] challenges are non-purposeful in terms of simply seeking the removal of a prospective juror on the basis of racial classification . . . ."[5]

(4) On the seventh day of jury selection, McCoy used a peremptory challenge to remove David Hickey ("Hickey"), a Caucasian male. Hickey's wife had retired five years earlier as a counselor at the Smyrna Department of Corrections, where McCoy was an inmate. It was at this point that the trial court, referencing McCoy's challenge, stated: "Mr. McCoy, I'm going to need some justification because I can't think of a reason."[6] McCoy responded with two justifications for his challenge. First, he explained to the court that Hickey had paused when answering whether he could find McCoy not guilty. Second, he stated:

> [Hickey's] wife is a counselor at DCC. I'm familiar with how inmates treat these counselors at times, some of the issues that went down. As he said, about five years ago, that's around the time when the lady was raped, the counselor lady, was raped in Smyrna. So I'm pretty sure he probably heard about that. His wife probably heard about that. So the counselors get an outlook that they have and their spouses, it may trickle onto their spouses things that they may have heard and for that it doesn't sit right . . . . I know on a day-to-day basis being back at the prison how people treat these counselors and very disrespectful way, throwing things on them like feces and

---

[5] Appellant's Op. Br. App. at A1943.
[6] Appellant's Op. Br. App. at A2151.

3

things of that nature. So I don't know if he's ever told her -- if she's ever told him anything about that but that just gives me a lot of pause in allowing the juror to sit on a trial while I have peremptory strikes to use, Your Honor.[7]

The trial court rejected McCoy's explanations, and found that that there was "no legitimate reason why [McCoy] would exclude the juror."[8] The trial court reasoned that Hickey's wife had been retired for five years and that, although she had spoken to him generally about her work as a counselor at the prison, she did not speak to him about "specific case[s]."[9]

(5) At the conclusion of trial, the jury found McCoy guilty on all counts except Motor Vehicle Theft. In accordance with 11 *Del. C.* § 4209(b),[10] the trial court held a penalty hearing. At the conclusion of the hearing, the jury found that there were statutory aggravating factors present, making McCoy eligible for the death penalty under 11 *Del. C.* § 4209(c).[11] The jury also found that the aggravating circumstances outweighed the mitigating circumstances and recommended the death penalty. In October 2012, the trial judge sentenced McCoy to death. This appeal followed.

---

[7] Appellant's Op. Br. App. at A2151.

[8] Appellant's Op. Br. App. at A2151.

[9] Appellant's Op. Br. App. at A2151.

[10] 11 *Del. C.* § 4209(b) ("Upon a conviction of guilt of a defendant of first-degree murder, the Superior Court shall conduct a separate hearing to determine whether the defendant should be sentenced to death or to life imprisonment . . . .").

[11] 11 *Del. C.* § 4209(c).

(6) This Court has stated that "'[o]ne of the primary safeguards for impaneling a fair and impartial jury is a defendant's right to challenge prospective jurors, either peremptorily or for cause.'"[12] In *Batson v. Kentucky*, the Supreme Court of the United States held that peremptory challenges can be used "'for any reason at all, as long as that reason is related to [a] view concerning the outcome' of the case to be tried . . . [and not based] solely on account of [the jurors'] race . . . ."[13] The Court went on to announce a tripartite analysis to be used when addressing a claim of racially-discriminatory peremptory challenges. As this Court reiterated in *Jones v. State*,[14] the three analytical steps are as follows:

> "First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race . . . . Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question . . . . Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination . . . ."[15]

As to the second step of the analysis, "[a] 'legitimate reason is not a reason that makes sense, but a reason that does not deny equal protection.'"[16] The reason is race-neutral "[u]nless a discriminatory intent is inherent in the [defendant's]

---

[12] *Schwan v. State*, 65 A.3d 582, 587 (Del. 2013) (quoting *Banther v. State*, 823 A.3d 467, 482 (2003)).

[13] *Batson*, 476 U.S. at 89 (quoting *United States v. Robinson*, 421 F.Supp. 467, 473 (Conn. 1976)).

[14] *Jones v. State*, 938 A.2d 626, 631 (Del. 2007).

[15] *Id.* (quoting *Robertson v. State*, 630 A.2d 1084, 1089 (Del.1993)).

[16] *Dixon v. State*, 673 A.2d 1220, 1224 (Del. 1996) (quoting *Purkett v. Elem*, 514 U.S. 765, 769 (1995)).

explanation . . . ."[17] The Supreme Court of the United States has found that even "silly or superstitious" justifications are acceptable as legitimate reasons under the second step of *Batson*.[18] "It is not until the *third* step that the persuasiveness of the justification becomes relevant-the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination."[19]

(7) Here, the trial court did not expressly refer to *Batson* when it refused to accept McCoy's peremptory challenge nor did it articulate a rationale for its ruling other than there was "no legitimate reason why [McCoy] would exclude the juror." If the ruling was based upon *Batson*, a full *Batson* analysis must be conducted by the trial court. We therefore conclude, consistent with our holding in *Jones v. State*, that this case must be remanded with the instruction that the trial court identify the basis for its ruling.

NOW, THEREFORE, IT IS ORDERED pursuant to Rule 19(c) that this matter is **REMANDED** to the Superior Court for further proceedings consistent with this Order. The Superior Court shall file its Report with the Clerk within thirty days. A request for additional time shall be granted upon a showing of good cause. Jurisdiction is retained.

---

[17] *Hernandez v. New York*, 500 U.S. 352, 360 (1991).
[18] *Purkett*, 514 U.S. at 768.
[19] *Id.* (emphasis in original).

BY THE COURT:

/s/ Henry duPont Ridgely
Justice